STATE *vs.* ARAM K. BERBERIAN.

NOVEMBER 17, 1961.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

PAOLINO, J. This is a criminal complaint charging the defendant with behaving in a disorderly manner. The case was tried in the superior court and resulted in a verdict of guilty. It is here on the defendant's exceptions to the denial of his motion for a directed verdict, to certain portions of the charge, to certain rulings denying his requests for instructions, and to the denial of his motion for a new trial.

The complaint charges that on May 18, 1960 the defendant "did behave in a disorderly manner, to wit: in that he did resist arrest by a peace officer and that he did create a disturbance in the Warwick police station and the parking lot adjacent thereto." The complaint was issued as a result of the following incidents. The defendant is a member in good standing of the bar of this state. On May 18, 1960 he appeared on behalf of certain clients before the district court of the fourth judicial district held in the city hall in Warwick. He parked his car in the municipal parking lot near the entrance leading to the court room. There was a sign indicating that the area where he parked his car was reserved for fire vehicles only. The legend on the sign read "Fire Cars Only." The fire station is close by.

At about 12:15 p.m. defendant returned to his car and found a yellow tag on the windshield, with the words "Fire Cars Only" written on the tag. He took the tag and wrote the words "Chief, do you have an ordinance covering this?" and signed his name on it. He then went into the police station. Sergeant Edward J. Silva was at his desk behind a

glass and cinder block partition. The defendant tossed the tag on the officer's desk through one of the openings in the glass partition and walked out of the building. Sergeant Silva testified that he recognized defendant and told Captain Clarence Mitchell, who was in the same room, about the incident.

Captain Mitchell thereupon went outside the building and asked defendant to come back. At the trial the captain testified that he vaguely recognized defendant when he first came into the station with the tag. The defendant returned to the police station voluntarily. The captain told him that it was not common practice for people to come in and just throw a ticket on the desk. He then asked defendant for his driver's license in order to complete the report on the tag. The defendant thereupon became argumentative, but according to the testimony of one of the police officers, there was no real shouting. A man who was standing at the glass partition left. The defendant refused to show his license and registration and told the captain that he did not have to show it to him.

The captain thereupon ordered Detective Frederick Angell, who was in the lobby, to bring defendant in. The defendant took three or four steps back and put his arms out. The captain went out into the lobby. He and Officer Angell walked defendant into the squad room. Sergeant Silva testified that they did not take him forcibly, they walked him in. Captain Mitchell testified that defendant did not resist violently. His exact testimony is: "I wouldn't say that he resisted violently, far from it."

When they got into the squad room, defendant stretched out on the floor on his back. After an exchange of words, the captain told him that unless he showed his license they would have to hold him. As the captain started to go out of the room, leaving defendant in Sergeant Silva's custody, defendant got up and ran out of the building through the municipal parking lot to the chambers of the judge of the

district court. The police followed him. He then left the judge's chambers and went voluntarily to the chief's office. He was later charged with the instant offense.

One of the grounds on which defendant bases his exception to the denial of his motion for a directed verdict is that there is no evidence to support the complaint. It is clear from the evidence that defendant's conduct in tossing the tag on the officer's desk without explanation and his refusal to show his operator's license, if he had one, was discourteous. It is equally clear that in the circumstances his lack of cooperation was unnecessary and unbecoming. But although his conduct was, in a degree, provocative, the issue before us rests solely on the question whether the evidence supports the charge made against him.

The complaint, as it reads, limits the charge of behaving in a disorderly manner to resisting arrest by a peace officer and creating a disturbance in the Warwick police station and the parking lot adjacent thereto. There is no claim by the police that defendant violated any law when he parked his car in the area in question. According to the testimony the yellow tag was merely a courtesy card asking for the cooperation of persons using the parking lot. Since he was not operating a motor vehicle upon the public highways when these incidents occurred, his refusal to show his license was not a violation of G. L. 1956, §31-10-25. There is nothing in the record indicating that he was being detained under the provisions of G. L. 1956, §12-7-1.

As we have already indicated, the testimony of the police officers was, in substance, that they did not take him forcibly; that they walked him from the lobby to the squad room; and that his resistance was little and far from violent. When Captain Mitchell informed him that unless he showed his license they would have to hold him, defendant replied that he wanted them to hold him. This is clearly not evidence of resistance. The incidents on which the police based the allegation that defendant resisted arrest occurred

prior to the time when he ran out of the squad room. After careful consideration we are of the opinion that notwithstanding defendant's discourtesy and lack of cooperation, his conduct did not in law constitute resistance to arrest.

The question remains whether there was any evidence to support the allegation that he created a disturbance in the police station and the parking lot adjacent thereto. In our opinion the evidence does not support the allegation, vague as it is. The testimony of the police is to the effect that in the police station the defendant became argumentative when he was asked to show his license and that he spoke rather harshly to the captain, but that while he spoke louder than the normal tone, he was not "quite shouting." With respect to his conduct in the parking lot, there is no evidence that he disturbed any member of the public. It is true that he put the police to the trouble of chasing him, but this is not, by itself, proof in law that the defendant created a disturbance. On our view of the law and the evidence we must hold that there is no evidence to support the charge against him and therefore the trial justice erred in denying the motion for a directed verdict. In the circumstances we do not deem it necessary to consider the defendant's other exceptions.

The defendant's exception to the denial of his motion for a directed verdict is sustained, and the case is remitted to the superior court with directions to dismiss the complaint and discharge the defendant.

*J. Joseph Nugent,* Attorney General, *Carmine A. Rao,* Assistant Attorney General, for State.

*Sanford H. Gorodetsky,* for defendant.