311 A.2d 286.

PASCO DEFUSCO *vs.* PETER BROPHY *et al.*

NOVEMBER 20, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This civil action for malicious prosecution arose out of an incident that occurred in 1965. Seven years later, a jury-waived trial was held in the Superior Court. Judgment was entered for the defendants. The plaintiff appealed.

The defendants are Peter Brophy and Kenneth A. Dyer. On July 25, 1965, they were conservation officers in the Department of Natural Resources and on duty in North Kingstown. On the day in question, they spent half an hour observing four individuals taking quahaugs from "very shallow" and polluted waters off Blue Beach just to the front of DeFusco's residence. The quahaugers would place the quahaugs in four piles. A young girl would come by and place each pile into her apron and then transport the quahaugs to the shore where she would dump each catch into a large wire basket.

The officers apprehended DeFusco as he was leaving the water. Brophy seized the basket and its contents as evidence. DeFusco became loud, abusive and obnoxious. He told one of his companions to take the basket away from Brophy. The companion tried but Brophy prevailed.

DeFusco yelled and cursed at the officers. Some of his more printable phrases were his description of the officers as "a bunch of boy scouts" and his admonition to them to "get the hell out of here and come back when you got a warrant." A woman whose voice matched DeFusco's in volume told the officers that DeFusco's father or father-in-law would have a heart attack if the brouhaha continued. At this point, the officers left the scene and went to the state police barracks in Wickford. Shortly thereafter, DeFusco stormed into the barracks and demanded that the officers be arrested for trespassing and larceny of his quahaugs. After the officers conferred with one of their superiors, three charges were lodged against DeFusco. One concerned his taking quahaugs from polluted waters. The other two charged him with obstructing Brophy and Dyer, respectively, in the performance of their duty.

The narrative concerning the "Blue Beach" incident comes solely from the testimony of Officer Dyer. At the time of trial, Brophy was no longer in the employ of the

state and DeFusco did not testify. The record shows that a justice of what was the District Court for the Second Judicial District found DeFusco guilty of the taking of quahaugs from the polluted waters charge and not guilty of the two obstructing charges. DeFusco appealed the guilty charge to the Superior Court. There, a jury returned a guilty verdict. Subsequently, the trial justice imposed the identical sentence prescribed in the District Court—a fine of $50 plus costs.

Two essential ingredients of any malicious prosecution action such as DeFusco has instituted are clear proof of an *absence* of "probable cause" for the commencement of the obstructing-justice charge and the presence of "malice" by the officers who were responsible for the initiation of the charges. *DeSimone* v. *Parillo*, 87 R. I. 95, 139 A.2d 81 (1958). DeFusco did not even come close to the establishment of the presence of either ingredient.[1]

In 1965, G. L. 1956, §11-32-1[2] provided for a fine or imprisonment for any person "* * * who shall obstruct any officer, civil or military, while in the execution of his office * * *." DeFusco, in arguing the absence of probable cause, claims that statute only bars the use of physical force in impeding an officer in the discharge of his duties. Since it is conceded that he did not lay a hand on either officer, DeFusco claims that their issuance of the obstruction complaints was totally without probable cause. We cannot agree.

---

[1]While malice may be inferred upon a showing of a lack of probable cause, a want of probable cause cannot be inferred from a showing of malice. However, a lack of probable cause will not be inferred from the mere failure to prosecute nor from the single fact that the plaintiff was acquitted from the charge lodged against him. *DeSimone* v. *Parillo*, 87 R. I. 95, 139 A.2d 81 (1958); *Fox* v. *Smith*, 25 R. I. 255, 55 A. 698 (1903).

[2]The Legislature has amended this statute so that it now applies to all state and municipal police officers and firefighters.

We need only refer to 3 Wharton, *Criminal Law and Procedure* §1284 at 633-34, where can be found the following:

"As a general rule, under statutes containing the words 'obstruct, resist, or oppose,' or 'resist, obstruct, or abuse,' or the single word 'resist,' the offense of resisting an officer can be committed without the employment of actual violence of direct force, and without making threats. * * *

"To 'obstruct' is to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent, and this term does not necessarily imply the employment of direct force or the exercise of direct means."

Similar sentiments are expressed in 44 A.L.R.3d 1018 (1972).

We believe that in certain circumstances, the spoken word can be just as effective in impeding an officer in the discharge of his duty as if the orator had grappled with the officer. While a penal statute is to be construed strictly, this rule will not be used to thwart the clear legislative intent. *State* v. *Milne,* 95 R. I. 315, 187 A.2d 136 (1962). We think it obvious that the whole thrust of §11-32-1 is to afford some guarantee to a public safety officer that he can execute his office without hinderance in an expeditious and efficient manner.

DeFusco's verbal harangue was so staged and of such length and so disconcerting in character that it did in fact prevent the conservation officers from doing their duty. *See State* v. *Tages,* 10 Ariz. App. 127, 457 P.2d 289 (1969). There was, therefore, probable cause for the issuance of the obstructing complaints.

Recently, in *Smith Development Corp.* v. *Bilow Enterprises, Inc.,* 112 R. I. 203, 308 A.2d 477 (1973), we alluded to the many meanings given to the word "malice." There we said a malicious interference with a contractual right means an unjustified interference with the contractual re-

lationship of others. Many years ago, in speaking of a malicious prosecution suit brought against a police officer, this court observed that the malice required in such a proceeding was proof of either actual ill will by the officer towards the plaintiff or a wanton disregard by the officer of the plaintiff's rights. *Atkinson* v. *Birmingham,* 44 R. I. 123, 116 A. 205 (1922).

There is nothing in this record that shows any evidence whatsoever of either of these two factors which in turn would justify a finding of malice.

The plaintiff's appeal is denied and dismissed.

*Berberian & Tanenbaum, Aram K. Berberian,* for plaintiff.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, for defendants.