406 A.2d 360.

WILLIAM H. JOHNSON *et al. vs.* ALFRED S. PALANGE.

SEPTEMBER 20, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J. This is a civil action that was originally brought by five individuals who joined as plaintiffs to recover damages from the defendant, Lieutenant Alfred S. Palange of the South Kingstown Police Department, for alleged false imprisonment and malicious prosecution.[1] The case was tried before a jury in the Superior Court and resulted in a verdict for the defendant. After entry of judgment, the plaintiffs appealed.

In mid-afternoon on July 24, 1975, the five plaintiffs were congregated on a sidewalk in front of the Parrot North in South Kingstown where, according to their testimony, they were "just talking, shooting the breeze" when a South Kingstown police officer, Dale Barrington, appeared. He had been ordered to the scene in response to an anonymous telephone call reporting a disturbance. The plaintiffs testified that Officer Barrington requested them to leave the sidewalk and either return to the cafe or go home.

They further testified that they were accused of loitering, and that they did not receive a satisfactory response to their inquiry of what was meant by loitering. In any event they did not comply with the officer's request that they leave the sidewalk but instead, according to Officer Barrington and Officer Michael Brown, the next police officer to arrive on the scene, gesticulated and shouted vulgar epithets at the police officers.[2] Officer Barrington testified that at one point several of the plaintiffs moved to within a foot of him and "threatened" him with clenched fists although no blows were ever struck. According to the officers this strident verbal confrontation lasted 8 or 9 minutes and ceased only after additional back-up police officers, including Lieutenant Palange, appeared on the scene.

---

[1] Prior to this trial, the complaints of two of the five plaintiffs were dismissed pursuant to Super. R. Civ. P. 37 for their failure to appear for depositions.

[2] The epithets included "fucking asshole," "fucking pig," and "[d]umb son a bitch."

The lieutenant testified that on his arrival there were fifteen to eighteen persons standing in a semicircle around plaintiffs and the officers then present, and that as the backup officers arrived the crowd began to disperse and plaintiffs reentered the cafe. The lieutenant was advised by Officer Barrington of what had occurred and was told that plaintiffs had surrounded him when he tried to speak to them; that they had "created a big stir and attracted attention all over the [Peacedale] Flats."

The plaintiffs were then arrested on the lieutenant's instructions and were taken to the police station where they were detained until 1 o'clock the following morning. They were released after signing an agreement to appear in District Court to answer charges that they "did quarrel, fight and behave in a disorderly manner * * * to the annoyance and disturbance of a portion of the peaceable inhabitants of the town" in violation of chapter 21, section 1 of the local ordinances, and also that they, "obstruct[ed] a uniformed police officer * * * in the execution of his duty" in violation of G.L. 1956 (1969 Reenactment) §11-32-1, as amended by P.L. 1971, ch. 220, §1. Following the dismissal by the District Court of the criminal charges against them,[3] the five plaintiffs commenced this Superior Court civil action for false imprisonment and malicious prosecution against Lieutenant Palange alleging that he had ordered their arrests and detention without probable cause.

To establish their claim it was incumbent upon plaintiffs to show with respect to (1) the false imprisonment claim that they were detained without legal justification, *Powers* v. *Carvalho*, 117 R.I. 519, 526, 368 A.2d 1242, 1246 (1977); *Webbier* v. *Thoroughbred Racing Protective Bureau, Inc.*, 105 R.I. 605, 613, 254 A.2d 285, 290 (1969); *Barth* v. *Flad*,

---

[3]It was stipulated in this trial that the charges against them in the District Court were dismissed in reliance on *State* v. *Berberian*, 93 R.I. 318, 175 A.2d 282 (1961). In that case the defendant was charged with behaving in a disorderly manner " 'in that * * * he did create a disturbance,' " and we held that a verdict should have been directed for the defendant because there was no evidence that he had created a disturbance. *Id.* at 319, 175 A.2d at 282.

99 R.I. 446, 448, 208 A.2d 533, 535 (1965); and (2) the malicious prosecution claim that Lieutenant Palange had no probable cause for instituting a criminal action against them. *Nagy* v. *McBurney*, 120 R.I. 925, 929, 392 A.2d 365, 367 (1978) *citing Powers* v. *Carvalho*, 117 R.I. at 526, 368 A.2d at 1246; *Lauzon* v. *Charroux*, 18 R.I. 467, 470, 28 A. 975, 976 (1894). These two requisites have been held to be practically synonymous. *See State* v. *Roach*, 106 R.I. 280, 259 A.2d 119, 121 (1969); *State* v. *McWeeney*, 100 R.I. 394, 399, 216 A.2d 357, 360 (1966), and the guidelines for determining whether they existed are found in §12-7-3(a). That enactment, prior to its amendment in 1973, provided that a police officer might lawfully arrest for a misdemeanor without a warrant when he:

> "ha[d] reasonable ground to believe that a misdemeanor ha[d] been or [was] being committed in his presence and that the person to be arrested ha[d] committed or [was] committing it."

The plaintiffs argue initially[4] that the South Kingstown ordinance is so facially defective and patently unconstitutional that Lieutenant Palange could not reasonably have relied on it as supplying probable cause either for arresting them or for issuing criminal complaints against them, and thus that the trial justice erred in allowing the ordinance to be admitted into evidence.[5]

To support this contention plaintiffs rely primarily on the line of cases headed by *Papachristou* v. *Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972), where the

---

[4]The plaintiffs have submitted two briefs. The first was filed in the normal manner; the second, entitled, "Substitute Issues and Arguments," was filed but a few days before oral argument. The defendant moved to strike the second brief because our rules do not permit such a late filing. The plaintiffs' response was that the second brief was merely a reorganization of the arguments found in their original brief. Having reviewed both the briefs, we conclude that no prejudice will result to the defendant by our consideration of the plaintiffs' substitute brief only.

[5]The plaintiffs do not challenge the constitutional validity of the obstruction statute, §11-32-1, which they were also charged with violating.

Supreme Court held that the city of Jacksonville's so-called disorderly conduct ordinance was so vague as to be invalid.[6]

The plaintiffs argue that the South Kingstown ordinance in question is so similar to the Jacksonville ordinance that is is patently unconstitutional thereby precluding the application in this case of the rule relied upon by the trial justice in admitting the ordinance into evidence—the rule that police officers are entitled to reply on the presumptive validity of statutes and ordinances.

We applied this principle in *Yekhtikian* v. *Blessing*, 90 R.I. 287, 157 A.2d 669 (1960). In that case, the plaintiff who sued for false imprisonment argued that the police officer who arrested him for the commission of a statutory felony should be held liable for damages if the statute were thereafter held unconstitutonal. We rejected that contention by saying that:

> "We think this position is untenable. It does more than impose an unfair burden on a conscientious police officer—it does violence to the sound public policy. One can readily imagine the uneasiness of a people dependent for the protection of their safety, lives and property on a police department, the members of which are reluctant to enforce an act of the legislature that has not as yet been judicially approved." *Id.* at 291, 157 A.2d at 671.

---

[6]The city of Jacksonville ordinance provided that:

" 'Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, theives, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses.' " 405 U.S. at 156-57 n.1, 92 S. Ct. at 840 n.1, 31 L. Ed. 2d at 112 n. 1.

In *Descoteaux* v. *Bonaventura*, 115 R.I. 555, 350 A.2d 396 (1976), we applied the same principle where the detention complained of was justified by the defendant as having been made in a reliance on a statute which, though challenged constitutionally in that case, had not been invalidated at the time of the trial.

The plaintiffs recognize the doctrine of presumptive validity, but assert that it is inapposite here. They contend that the South Kingstown ordinance is not distinguishable from the Warwick ordinance which we declared unconstitutional in *State* v. *Berker*, 114 R.I. 72, 328 A.2d 729 (1974),[7] prior to the arrest out of which this action grows and that consequently, instead of applying the doctrine of presumptive validity to insulate defendant from liability, we should in substance be guided by the dicta in *Michigan* v. *DeFillippo*, 443 U.S. 31, 38, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343, 350 (1979), a case that was decided subsequent to the filing of plaintiffs' brief.

In that case the Court said:

> "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality— with the possible exception of a law *so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.*" (Emphasis added.)

Merely because an attorney trained in the law, familiar with the *Papachristou* line of cases, knowledgeable of *State* v. *Berker*, would recognize possible and perhaps even fatal frailties in the South Kingstown ordinance does not mean

---

[7]The ordinance at issue was section 14-10 of the Ordinances of the City of Warwick which provided:

> " 'Any person who shall be found reveling, quarreling, fighting or wantonly making a false alarm or cry of fire or otherwise behaving in a disorderly or indecent manner in the city or who shall aid, incite or encourage the same to be done shall be guilty of a violation of this section.' " 114 R.I. at 73 n.1, 328 A.2d at 730 n.1.

that a South Kingstown police officer responding to a complaint and faced with a situation proscribed by that ordinance should, notwithstanding his limited legal training, be held to the attorney's standard. Indeed, were we to impose on him that burden of determining as a question of law whether or not the existing ordinance was constitutionally entitled to enforcement, we would, in effect, be rejecting part of the reason underlying *Pierson* v. *Ray*, 386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967), where the Court, speaking through Mr. Chief Justice Warren, in holding that good-faith police action based upon a presumptively valid statute constitutes a valid defense in a damage action under 42 U.S.C §1983, observed:

> "[a] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." 386 U.S. at 555, 87 S. Ct. at 1218, 18 L. Ed. 2d at 295.

Thus, absent any prior declaration by this court that the South Kingstown ordinance is unconstitutional, we are not prepared to say as a matter of law that Lieutenant Palange was foreclosed from relying on the ordinance's presumptive validity and that the trial justice erred in admitting the ordinance into evidence.

The plaintiffs also argue that the ordinance should not have been admitted because it was preempted by G.L. 1956 (1969 Reenactment) §11-45-1 (since repealed) read in conjunction with G.L. 1956 (1970 Reenactment) §45-6-1 and because it consisted of sentence fragments making it "an obvious nullity." We believe the question of preemption, like the question of the ordinance's constitutionality, is one to be resolved by the courts and not by police speculation. Since at the time this action arose we had not ruled whether the state legislation had preempted the field, the ordinance was at least presumptively valid for law enforcement purposes. Neither are we convinced that the ordinance was so grammatically defective that good faith police reliance on it was precluded and there is no suggestion that defendant did not act in good faith.

The plaintiffs next argue that even if the ordinance was presumptively valid, the evidence was insufficient to permit a jury to find that Lieutenant Palange had probable cause for believing that plaintiffs had violated either the ordinance or the obstruction statute. Hence, plaintiffs argue that the trial justice erred in denying their motion for a directed verdict on the issue of liability.[8]

In considering plaintiffs' motion for a directed verdict the trial justice, without weighing the evidence or considering the credibility of the witnesses, was required—as we are on appeal—to view the evidence and the inferences reasonably deducible therefrom in the light most favorable to defendant and to submit the case to the jury if, upon so viewing the evidence, it appeared that there were material issues on which reasonable persons might differ. *Nagy* v. *McBurney,* 120 R.I. at 928-29, 392 A.2d at 367; *Evans* v. *Liguori,* 118 R.I. 389, 394, 374 A.2d 774, 776 (1977); *Marshall* v. *Tomaselli,* 118 R.I. 190, 95, 372 A.2d 1280, 1283 (1977). In proper context and otherwise phrased, it was incumbent upon him to determine whether Lieutenant Palange, based on the available facts and acting as an ordinarily careful and prudent person, could have reasonably believed that the South Kingstown ordinance was being violated. *Quinlan* v. *Breslin,* 61 R.I. 327, 330, 200 A. 989, 991 (1938); *accord, Cook* v. *Lester,* 99 R.I. 28, 31, 205 A.2d 143, 145 (1964).

In pertinent part section I of that ordinance makes it "improper conduct," punishable by fine or imprisonment, for any person to

---

[8]Although the trial justice reserved his decision on the directed verdict motion, he failed to render that decision once the jury returned its verdict and the plaintiffs' counsel did not bring that failure to his attention. Super. R. Civ. P. 50(b) provides that a trial justice may reserve a decision on a directed verdict motion and that, "[w]hen the jury is discharged the court *shall* forthwith enter a decision on the motion reserved whether or not the jury returned a verdict." (Emphasis added.) We believe Rule 50(b) imposes a mandatory obligation on the trial justice to rule on a reserved motion for directed verdict. If he fails to do so and enters a judgment for the non-moving party, he has impliedly denied the reserved motion and that denial may be assigned as an alleged error on appeal.

"quarrel, fight, revel * * * commit any nuisance * * * or otherwise behave in a noisy, disorderly or indecent manner, to the disturbance or annoyance of the peaceable people of [the] Town, or any portion of them * * *."

That language is obviously far reaching and indeed somewhat nebulous. However, as we observed earlier, the provision was not so "grossly and flagrantly" improper as to preclude Lieutenant Palange from relying on its validity. The evidence, viewed in a light most favorable to him, indicates that he ordered plaintiffs' arrest, when he learned that they had shouted obscenities at the officers first on the scene, for 8 to 10 minutes with sufficient volume to be heard 200 to 300 feet away, to attract attention "all over [Peacedale] Flats" and to attract a crowd of fifteen to eighteen persons. Given these facts and circumstances, the essential question was whether Lieutenant Palange, acting as an ordinarily careful and prudent person, could reasonably have concluded that plaintiffs had quarreled, reveled or behaved in a noisy or disorderly manner to the annoyance or disturbance of the townspeople. In our judgment that issue was one on which reasonable persons might differ and hence it was for the jury to decide.

Moreover, the epithets uttered, *see* note 1 *supra*, may have constituted what are known as "fighting words," that is, words which are not constitutionally protected as free speech because " 'by their very utterance [they] inflict injury or tend to incite an immediate breach of the peace.' " *Gooding* v. *Wilson*, 405 U.S. 518, 522, 92 S. Ct. 1103, 1106, 31 L. Ed. 2d 408, 414 (1972), *quoting Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 769, 86 L. Ed. 1031, 1035 (1942). Fighting words have been defined as "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen* v. *California*, 403 U.S. 15, 20, 91 S. Ct. 1780, 1785, 29 L. Ed. 2d 284, 291 (1971). Such words, even when addressed to a police officer, do not lose their character as fighting words,

if, under the objective test that we apply, they "would cause an average person to fight." *State* v. *Authelet,* 120 R.I. 42, 57, 385 A.2d 642, 649-50 (1978).

Whether or not the plaintiffs' verbal insults were in fact fighting words is a question that we need not decide. We raise the fighting words issue merely to underscore our belief that the issue of probable cause was an additional variable for the factfinders to consider in determining whether a person of ordinary prudence could have believed that the peacable inhabitants of the town or any portion of them were being annoyed or disturbed by behavior proscribed by the ordinance.

We reach the same conclusion with respect to whether Lieutenant Palange could have had probable cause to believe that plaintiffs had obstructed an officer in the execution of his duty in violation of §11-32-1. The evidence on that question, viewed most favorably to defendant, shows that police officers responded to a complaint about "a disturbance and drinking." The first officer on the scene was confronted by plaintiffs who, when asked to return to the bar or disperse, began shouting loud obscenities at the officer. A second officer arrived, repeated the request to disperse, and, as a crowd gathered, was met by further epithets from plaintiffs. In those circumstances, a jury could reasonably have concluded that it was the officers' duty under the town ordinance to quell the disturbance which had arisen and that Lieutenant Palange had probable cause to believe that plaintiffs' tactics had obstructed the officers in the execution of that duty. Although the evidence may have been susceptible to contrary reasonable conclusions, it was the jury's and not the trial justice's function to choose between them.

The plaintiffs contend that Lieutenant Palange could not have had probable cause to believe the obstruction statute had been violated because, they assert, spoken words can never constitute the crime of obstructing a police officer in the execution of his duty. A like assertion was but recently rejected in *DeFusco* v. *Brophy,* 112 R.I. 461, 311 A.2d 286 (1973), where we noted that:

> "in certain circumstances, the spoken word can be just as effective in impeding an officer in the discharge of his duty as if the orator had grappled with the officer." *Id.* at 464, 311 A.2d at 288.

We held in that case that the "verbal harangue was so staged and of such length and so disconcerting in character that it did in fact prevent the * * * officers from doing their duty." *Id. See also* cases cited in Annot., 44 A.L.R.3d 1018, §4 at 1026 (obstruction may be committed without force or violence), §8 at 1037 (profanity or vilification of police officer may warrant conviction for obstruction where language used hindered the officer or made his job more difficult) (1972). Thus we believe that the jury was entitled to consider the length, character, and impact of plaintiffs' "verbal harangue" in determining whether or not Lieutenant Palange could reasonably have believed that the obstruction statute had been violated.

We emphasize that the dispositive issue here is not—as it would be if plaintiffs were faced with criminal charges—whether there was sufficient evidence to prove beyond a reasonable doubt that they had violated the obstruction statute, but only whether there were sufficient facts to give Lieutenant Palange probable cause or reasonable grounds to believe that they had violated the statute. That question, as we have already said, was properly submitted to the jury for resolution.

The plaintiffs' other arguments relate to the trial justice's jury instructions. To the extent not already disposed of, they require but little discussion. The record discloses that the plaintiffs made known their objection to each of the jury instructions they now challenge merely by stating that they took "exception" to the particular instruction without voicing any specific grounds therefor.[9] Super. R. Civ. P. 51(b) provides in pertinent part, however, that:

---

[9]Super. R. Civ. P. 46, in effect since January 10, 1966, abolished exceptions in civil cases.

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto * * * *stating distinctly* the matter to which he objects and *the grounds* of his objection." (Emphasis added.)

This provision is included in the rules in order to afford the trial justice an opportunity to correct his instructions, if necessary, and the objection must be specific enough so that the court's attention is focused on the precise nature of the alleged error. *Seabra* v. *Puritan Life Insurance Co.*, 117 R.I. 488, 503-04, 369 A.2d 652, 661 (1977). *See Hoffman* v. *Sachs*, 121 R.I. 855, 403 A.2d 668 (1979). The plaintiffs' general objections, without specific statements of grounds therefor, were clearly insufficient under Rule 51(b) and thus present nothing for us to review. *Seabra* v. *Puritan Life Insurance Co.*, 117 R.I. at 503, 369 A.2d at 661; *accord*, 9 Wright & Miller, *Federal Practice and Procedure* §2554 at 644 (1971).

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

Mr. Justice Joslin participated in the oral arguments and in the decision, but retired prior to the publication of the opinion herein.

*Aram K. Berberian*, for plaintiffs.

*William Gerstenblatt*, for defendant.