Joseph **SENRA** and Maria Senra,
Plaintiffs–Appellants,

v.

Stephen **CUNNINGHAM**, et al.,
Defendants–Appellees.

No. 93–1064.

United States Court of Appeals,
First Circuit.

Heard June 7, 1993.

Decided Nov. 16, 1993.

---

Stephen J. Fortunato, Jr., with whom Fortunato & Tarro, was on brief, for plaintiffs-appellants.

Marc DeSisto, with whom Carroll, Kelly & Murphy, was on brief, for defendants-appellees Stephen Cunningham and Douglas Laird.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, BOUDIN, Circuit Judge.

TORRUELLA, Circuit Judge.

Plaintiffs-appellants Joseph and María Senra sued two Cumberland, Rhode Island police officers, Stephen Cunningham and Douglas Laird, for violation of their constitutional rights under 42 U.S.C. § 1983 and various state laws. Mr. Senra alleged that he had been falsely arrested and imprisoned, subjected to excessive force, and maliciously prosecuted; Mrs. Senra claimed only that the officers had used excessive force against her during the arrest of her husband. At the close of the evidence, the district court granted defendants' motion for judgment as a matter of law on the malicious prosecution claims. The remaining counts went to a jury, which found for the police officers. The court then denied plaintiffs' motion for a new trial, and plaintiffs appealed. For the reasons stated herein, we affirm.

## I

### Background

On May 20, 1989, at approximately 11:30 p.m., Mr. Senra struck a neighbor's car while driving home. Instead of stopping, he proceeded to his house just down the street,

purportedly intending to settle the matter the next day. The neighbor heard the accident and learned from a bystander that Mr. Senra had hit his car. The neighbor called the police and went to Mr. Senra's home, where he was told to return in the morning.

The Senras claim that Mr. Senra answered the door when the police arrived, but before he could explain, he was grabbed by the officers, dragged out of the house, and thrown over some hedges in the front lawn. During the struggle, his right arm, which was withered from polio, was broken.

The police officers offer a different version of the story. They contend that no one answered when they originally knocked at the Senras' door. Mr. Senra only appeared later after the officers remained in the yard to wait for a tow truck they had called to remove Mr. Senra's car. The officers smelled alcohol on his breath and noticed that he was staggering. Mr. Senra shouted vulgarities at the officers and flailed his arms. He then lost his balance, tripped over the shrubbery, and fell to the ground. At that point, Officer Laird approached Mr. Senra to restrain him and a struggle ensued. The officers contend that Mr. Senra attempted to hit, kick, and bite Officer Laird and that Mr. Senra kicked Officer Cunningham in the groin when he tried to assist Officer Laird.

The Senras claim that, after Mr. Senra was attacked without provocation, Mrs. Senra sought to assist her husband. They maintain that one of the officers hit her in the stomach, loosening stitches from her recent hysterectomy. The officers assert that Mrs. Senra and her daughter struck and kicked them while they sought to restrain Mr. Senra. Mrs. Senra ultimately locked herself in the car to prevent its removal.

After the altercation subsided, Mr. Senra informed the officers of the pain in his arm. He was taken to a hospital, where he learned that his arm was broken. A nurse from the hospital testified that Mr. Senra was uncooperative, combative and vulgar when he ar-rived and that a blood test revealed that his blood alcohol level exceeded the permissible limit for driving a motor vehicle.

Mr. Senra was later charged with assaulting a police officer, disorderly conduct, and leaving the scene of an accident. A jury acquitted him of assault, and a judge granted his motion for judgment of acquittal on the disorderly conduct charge. The motor vehicle offense was administratively dismissed.

The Senras then brought this action in the district court seeking damages. After an unfavorable outcome, the Senras appealed.

## II

### Jury Instructions

The Senras first assign error to the district court's refusal to consider jury instructions that they offered shortly before the close of the evidence. The court rejected the instructions because, in its view, the plaintiffs' proffer arrived too late, in violation of the court's Amended Pretrial Order. That Order required the parties to submit "full and complete proposed jury instructions" to the court twenty days prior to trial. The Senras claim that, notwithstanding the district court's broad power to organize and facilitate litigation pursuant to Federal Rule of Civil Procedure 16, requiring instructions much in advance of trial and refusing to consider instructions proposed before the close of the evidence conflicts with Federal Rule of Civil Procedure 51.[1]

Rule 16 provides the district courts with a powerful mechanism to organize and expedite litigation. The pretrial conferences contemplated by the Rule create an indispensable opportunity to clarify and delimit issues to be tried and to establish a timetable for the proceedings as a whole. As such, the outcome of pretrial conferences are central to the litigation, for as the Rule states, pretrial orders "shall control the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16(e). "Trial judges enjoy great latitude in carrying out case-

1. Fed.R.Civ.P. 51 provides, in relevant part:
   At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.

management functions." *Jones v. Winnepe-saukee Realty,* 990 F.2d 1, 5 (1st Cir.1993) (citing *In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1019 (1st Cir. 1988)). The Rule also allows sanctions for noncompliance. Fed.R.Civ.P. 16(f). The district court, for example, may refuse to hear testimony or give instructions on issues not originally encompassed by the pretrial order. *See generally* Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1527 (1990). We review a district court's imposition of sanctions for failure to comply with pretrial orders only for abuse of discretion. *Jones,* 990 F.2d at 5; *Velázquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072, 1075 (1st Cir.1990). "Although such a deferential approach does not confer *carte blanche* power to the district court," litigants bear a formidable burden to show that the district court erred. *Jones,* 990 F.2d at 5.

■ The district court requested the jury instructions twenty days in advance of trial. The pretrial order was not ambiguous and appellants offered two instructions within the time set by the court. We have found no cases that even suggest that an order requiring jury instructions before trial would in any way violate the Federal Rules of Civil Procedure. Absent such a case, the district court's refusal to consider appellants' proffered instructions was not an abuse of discretion where appellants understood that the court had requested the instructions in advance of trial and had not shown that the tardily filed jury instructions pertained to a matter that was not foreseeable at the time set by the court.

■ Having found no error in the court's refusal to consider appellants' proffered instructions, we turn to the appellants' objections to the instructions on appeal. To preserve an objection on appeal to a jury instruction, a party must contemporaneously object to the instruction. The exception must apprise the judge of the basis of the error. Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected

to and the grounds of the objection."). Failure to timely object waives the error on appeal. *See Elgabri v. Lekas,* 964 F.2d 1255, 1258 (1st Cir.1992).

■ In this case, the record indicates that the jury retired to deliberate prior to appellants' objections to the jury instructions. Appellants therefore have waived their exceptions. We have reviewed, as we must, the claims of error made by appellants in relation to the instructions to ensure that there has been no plain error amounting to a miscarriage of justice. *See Elgabri,* 964 F.2d at 1259; *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 809 (1st Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). We are satisfied that no such error exists.

### III

### *Evidentiary Rulings*

The Senras contend that the district court erroneously admitted into evidence Officer Laird's knowledge of prior incidents of intoxication and domestic disturbance at Mr. Senra's home and evidence that Mr. Senra previously had been convicted of driving while intoxicated. Officer Laird testified that he personally had been involved in at least six incidents in which the police were called to respond to domestic disturbances that resulted from Mr. Senra's drunken and violent behavior. The drunk driving conviction occurred in 1986. Mr. Senra argues that Federal Rules of Evidence 403, 404, 608, and 609 require exclusion of such evidence.

In this case, Mr. Senra was not on trial as a defendant. Rather, he sued the police officers for use of excessive force and false arrest. To defend against an allegation of excessive force, defendant officers needed to demonstrate that their conduct was "objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Defendant police officers introduced the testimony about Mr. Senra's prior conduct to explain the "facts and circumstances" that they confronted when they arrived at the Senra household and to demonstrate the reason-

ableness of their conduct. Similarly, the officers proffered the fact of conviction to show a motivation for fleeing the scene of the accident. They theorized that Mr. Senra left the accident because he wanted to avoid another drunk driving conviction.

■ With respect to the officers explanation of their prior dealings with Mr. Senra, we find that the district court did not err by admitting the evidence. The officers' prior knowledge of Mr. Senra is relevant because it sheds light on the reasonableness of their responses, a matter quite pertinent to the undue force claim. Because the evidence is probative of a matter other than Mr. Senra's bad character, Rule 404(b) poses no bar.[2]

Appellants' Rule 403 challenge is likewise unavailing.[3] Admittedly the evidence is of limited value to the officers since their version of the events on the night in question amply supported their actions without reference to prior bad conduct. The prejudicial impact, however, cannot be considered significant in light of the officers' testimony concerning Mr. Senra's outrageous behavior on that night. The officers testified that they smelled alcohol on Mr. Senra's breath and that Mr. Senra acted in a hostile manner by verbally and physically attacking them. As such, the district court did not abuse its discretion by admitting the testimony. *See United States v. Walters*, 904 F.2d 765, 768 (1st Cir.1990).

■ With respect to Mr. Senra's prior conviction for drunk driving, the district court admitted the evidence because it believed that the evidence was relevant to Mr.

Senra's motivation for leaving the scene of the accident. His motivation for leaving the scene was irrelevant, however, to any disputed issue in the case. To justify arrest, it would be sufficient to know that he had departed. The previous conviction therefore had no probative value. It is also quite likely that the prior conviction would be inadmissible for impeachment under Rule 609.[4]

Assuming thus that it was error to admit evidence of the prior conviction, we consider whether the error was harmless. "The erroneous admission of evidence of earlier crimes is harmless if we determine that it is 'highly probable' that the error did not contribute to the verdict." *United States v. González–Sánchez*, 825 F.2d 572, 580 (1st Cir.1987) (quoting *United States v. Bosch*, 584 F.2d 1113, 1117–18 (1st Cir.1978)). The jury was asked to choose between two contradictory versions of the events in question. The verdict did not hinge on a particular piece of evidence or improper coloring provided by evidence of prior bad acts. Because three sources (both officers and the hospital nurse) testified that Mr. Senra was intoxicated and belligerent on the night of the arrest, the effect of the evidence of prior incidents, which occurred at least two or more years earlier, was greatly muted. If the jury believed the police and the hospital nurse, which it apparently did, Mr. Senra hit a parked car, fled the scene, and attacked the police in a drunken fit. This evidence was more than sufficient to support a verdict for the defendants and remote incidents of similar conduct added little. The improper ad-

---

2. Fed.R.Evid. 404(b) provides in relevant part: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident. . . .

3. Fed.R.Evid. 403 states: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

4. Fed.R.Evid. 609 states in pertinent part:

(a) General rule.—For the purpose of attacking the credibility of a witness,
(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

mission of the evidence was therefore harmless.

## IV

### *Malicious Prosecution*

At the close of all the evidence, the district court granted defendants judgment as a matter of law on Mr. Senra's action for malicious prosecution under § 1983 and a pendent state law claim.[5] The district court directed the verdict of the § 1983 claim because Mr. Senra had not demonstrated that the alleged misconduct rose to constitutional magnitude. With respect to the state law claim, the court found that as a matter of law, Mr. Senra failed to show that defendants "initiated" the prosecution within the meaning of that term under Rhode Island law. Mr. Senra now argues that the court erred in directing the verdict on both actions.

"Under the accepted standard of appellate review, we 'examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant' to determine whether 'reasonable persons could reach but one conclusion.'" *Veranda Beach Club v. Western Surety Co.*, 936 F.2d 1364, 1375 (1st Cir.1991) (quoting *Wagenmann v. Adams*, 829 F.2d 196, 200 (1st Cir. 1987)). "In conducting that exercise, we may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." *Wagenmann*, 829 F.2d at 200.

■ To state a federal claim for malicious prosecution under § 1983, "the complaint must assert that the malicious conduct was so egregious that it violated substantive or procedural due process rights under the Fourteenth Amendment." *Torres v. Superintendent of Police*, 893 F.2d 404, 409 (1st Cir.1990). A substantive due process violation occurs when the malicious prosecution is "conscience-shocking." *Id.* at 410. "Where plaintiff has not been physically abused, detained, prosecuted due to racial or political motivation or otherwise deprived of equal protection of the law, courts are reluctant to

find 'conscience shocking' conduct that would implicate a constitutional violation." *Id.* A procedural due process claim will lie where the alleged conduct deprived plaintiff of liberty by "a distortion and corruption of the processes of law," such as "falsification of evidence or some other egregious conduct resulting in a denial of a fair trial." *Id.* Furthermore, to establish a malicious prosecution claim under § 1983 on the grounds that his right to procedural due process was violated, the plaintiff must "show that there was no adequate state postdeprivation remedy available to rectify the harm." *Id.*

■ "'The federal claim under [42 U.S.C.] section 1983 for malicious prosecution differs from the state civil suit in that it requires that state officials acting 'under color of law' institute the criminal proceedings against the plaintiff *and thereby deprive him of rights secured under the Constitution.'"* *Smith v. Massachusetts Dept. of Correction*, 936 F.2d 1390, 1402 (1st Cir.1991) (quoting *Torres*, 893 F.2d at 409) (emphasis added in *Smith*). Malicious prosecution does not amount to a constitutional tort, unless the plaintiff has been deprived of life, liberty, or property, or another constitutional right. *Ayala–Martínez v. Angleró*, 982 F.2d 26, 27 (1st Cir. 1992) (citing *Albright v. Oliver*, 975 F.2d 343, 347 (7th Cir.1992) (holding that malicious prosecution, like defamation, does not amount to a constitutional tort, unless the plaintiff is deprived of his right to liberty by wrongful incarceration), *cert. granted*, —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 757 (1993)).

■ Mr. Senra clearly has not stated a claim under the substantive due process branch of the § 1983 malicious prosecution analysis. Mr. Senra did not allege that the police officers maliciously prosecuted him for racial or political reasons or to deprive him of equal protection of the law. Nor has Mr. Senra stated a claim for a violation of his procedural due process rights because he failed to demonstrate the inadequacy of the state law malicious prosecution remedy.

---

5. Although Mr. Senra's original complaint and brief on appeal lacked specificity, the district court treated Mr. Senra's proffers as alleging both state and federal causes of action. As such, we will do so as well.

174

We turn then to whether the district court properly directed the verdict in favor of defendant officers on the state law malicious prosecution claim. To establish a claim of malicious prosecution under Rhode Island law, a plaintiff must prove that (1) defendants initiated a criminal proceeding against him; (2) with malice; (3) and without probable cause; which (4) terminated in plaintiff's favor. *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I.1987); *Nagy v. McBurney*, 120 R.I. 925, 929, 392 A.2d 365, 367 (1978). In the district court, the success of Mr. Senra's state law action hinged on the proof he offered on the "initiation" element.[6] The district court conceded that Rhode Island case law offered little guidance with respect to what actions constitute initiation in cases involving police officers. Nonetheless, the district court indicated early in the proceeding that plaintiffs' case would benefit from evidence concerning what information the officers transmitted to the state Attorney General's office, what other information the prosecuting officer possessed, and who finally made the decision to prosecute. (Trial Transcript at 21, Nov. 2, 1992). The district judge ultimately directed the verdict in favor of defendants, however, because he believed "[t]here [was] no evidence that [the police officers] initiated or actively participated in the bringing of the charges by the Attorney General's Office by way of information." (Trial Transcript at 34, Nov. 3, 1992).[7] According to the court, defendants were entitled to a judgment as a matter of law because (1) the state prosecuting attorney's discretionary decision to prosecute constituted an intervening cause that insulated defendant officers from liability, and (2) Mr. Senra failed to provide sufficient evidence about the process by which criminal charges are brought to survive the motion for directed verdict.

We agree with the district court that the law of initiation in Rhode Island is not clear. We draw, however, on the law concerning liability for private persons bringing information before the police. The chain of causation is broken if the filing of the information by the attorney at the state Attorney General's office was free of pressure or influence exerted by the police officers or knowing misstatements made by the officers to the Attorney General's office. *See Dellums v. Powell*, 566 F.2d 167, 192–193 (D.C.Cir.1977); Restatement (Second) of Torts § 653 cmt. g; W. Page Keeton, *Prosser & Keeton on The Law of Torts* § 119, at 872–73 & nn. 33–36 (5th ed. 1984). At the time the district court directed the verdict for defendants, it remained possible that the police officers had lied about the events in question and had communicated that false information to state prosecutors. If the evidence upon which the prosecutors based the filing of the information was false, the state prosecutors could not have exercised their discretion. As a result, the actions of the prosecutors would not have insulated the police officers from suit for malicious prosecution. Given this possibility, the district court therefore improperly directed the verdict for defendant officers at that time.

In light of the jury's verdict, however, the error is harmless. The jury found in favor of the police officers on the excessive force claim, finding that they reasonably responded to Mr. Senra's behavior the night that Mr. Senra was arrested. It follows then that officers possessed sufficient information about Mr. Senra to charge him with assaulting a police officer, disorderly conduct, and leaving the scene of an accident. The jury's verdict therefore precludes a finding of malicious prosecution.

**6.** In order to survive a motion for judgment as a matter of law, plaintiff must offer proof sufficient to state a claim as to all elements of the cause of action. It is not disputed that the alleged malicious prosecution terminated in Mr. Senra's favor. Actual proof of malice is not necessary as it may be inferred from the absence of probable cause to prosecute. *Nagy*, 392 A.2d at 367; *DeFusco v. Brophy*, 112 R.I. 461, 463 n. 1, 311 A.2d 286, 287 n. 1 (1973). Finally, it is clear that the existence of probable cause to arrest, which in this case is coterminous with probable cause to prosecute, was sufficiently in doubt since the district court allowed the claim of false arrest to go to the jury. As such, the critical inquiry, as the district court realized, is whether defendants initiated the prosecution.

**7.** The charges in this case were brought by information. *See* Rhode Island Superior Court Rules of Criminal Procedure 7.

The judgment of the district court is *affirmed*.