**Thomas DONNELLY et al.,**

v.

**GREY GOOSE LINES, INC., et al.**

**No. 94–309–Appeal.**

Supreme Court of Rhode Island.

Dec. 15, 1995.

Michael Hagopian, Cranston, for Plaintiff.

Gregory Acciardo, Johnston, Louis Cioci, Providence, for Defendant.

## OPINION

PER CURIAM.

This matter came before the Supreme Court on November 21, 1995, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not be summarily decided. The plaintiffs, Thomas Donnelly (Donnelly) and George Murphy (Murphy), as successors in interest to Sea Shore Transportation, Inc. (Sea Shore), appeal from a jury verdict in favor of the defendants, Grey Goose Lines, Inc., et al. (Grey Goose), in connection with a contract dispute.

This action was heard before a jury on November 29 and 30, 1993. Three witnesses were presented to the jury. The first witness, Donnelly, a partner in Sea Shore, testified that he entered into an oral agreement with Grey Goose in November of 1985. He testified that pursuant to the agreement Sea Shore would provide four charter buses to Grey Goose for $8,000 a month. Donnelly would also provide Grey Goose with at least $150,000's worth of charter business through his current employer, Classic Tours, a travel agency. Donnelly testified that from December of 1985 to October of 1986, he referred approximately $164,881's worth of business to Grey Goose.

In December of 1985 Grey Goose took possession of Sea Shore's four charter buses. In January of 1986 Sea Shore received the first of several payments from Grey Goose. The payments, however, were in different amounts each month. In late 1987 Donnelly

decided to stop doing business with Grey Goose because Grey Goose was behind in its payments and owed him $28,894. Donnelly testified that he had sent several letters to Grey Goose, informing it that it was "behind in payments, telling them how much [it] owed [him], and [it] didn't respond." Donnelly stated that when Grey Goose was told that it had failed to pay the required $8,000 a month, Grey Goose stated that they would "do [its] best to make up as quickly as possible the $8,000 January payment." Grey Goose also told Donnelly that it would try to make up the monthly deficiencies in the future. The plaintiffs now claim, inter alia, that defendants owe plaintiffs $28,994 pursuant to their agreement.

The second witness, Murphy, a partner at Sea Shore, testified that an agreement existed between Sea Shore and Grey Goose. With respect to Sea Shore's lease payments, Murphy stated that about $8,000 would go "towards paying off some of the leases [on Sea Shore's charter buses] and some of the debt that [Sea Shore had] incurred."

Finally, Paul Barone (Barone), a manager at Grey Goose, testified that Grey Goose had never entered into a written contract with either Donnelly or Sea Shore. However, Barone testified, Grey Goose agreed to take over Sea Shore's charter buses because Donnelly had indicated that Sea Shore was in disarray and in danger of going out of business. Barone testified that neither party determined the specific amount of money Donnelly would receive from Grey Goose. Instead, the amount paid each month to Donnelly was based on "how much business [Grey Goose] would receive a month and how much the amount of repairs would go into [Sea Shore's charter buses]." Barone testified that the Sea Shore charter buses were used only when Donnelly referred business to Grey Goose and that the business Grey Goose received from Donnelly would fluctuate from month to month. In these circumstances, Barone testified, Grey Goose's payments to Donnelly would thereby vary from month to month. Grey Goose now maintains that it does not owe any money to Donnelly and that it has fully compensated plaintiffs pursuant to their agreement.

At the conclusion of the trial the jury returned a verdict specifically finding that plaintiffs did not prove by a preponderance of the evidence that defendants owed money to them. Judgment entered for defendants on November 30, 1993. The plaintiffs thereafter moved for a new trial on several grounds. First, plaintiffs contended that the trial justice erred by failing to instruct the jury about their claim for unjust enrichment. Second, plaintiffs argued that the trial justice's definition of a contract in her jury instructions confused the jury. Finally, plaintiffs claimed that the jury's verdict was against the weight of the evidence. After a hearing held on January 27, 1994, the trial justice denied plaintiffs' motion for a new trial. On February 16, 1994, plaintiffs appealed the trial justice's denial of their motion. In support of their appeal, plaintiffs raised the same arguments that they had advanced in support of their motion for a new trial.

■ We have often stated, if the trial justice properly performs his or her duties in acting upon a motion for a new trial, we shall "not disturb his [or her] decision unless the moving party shows that he [or she] overlooked or misconceived material evidence or was otherwise wrong." *Brodeur v. Desrosiers*, 505 A.2d 418, 423 (R.I.1986). *See also Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, 474 A.2d 436, 444 (R.I.1984); *Fox v. Allstate Insurance Co.*, 425 A.2d 903, 907 (R.I.1981). Upon review of the record before us, we find that the trial justice performed all the procedural analyses required of her in denying plaintiffs' motion for a new trial. *See State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994); *State v. Marini*, 638 A.2d 507, 515 (R.I.1994). The plaintiffs failed to show, and we do not find, that the trial justice's decision was clearly wrong or that she overlooked or misconceived material and relevant evidence.

■ In arguing that the jury's verdict was against the weight of the evidence, plaintiffs are essentially challenging the jury's as well as the trial justice's determination of the credibility of witnesses. As we have often stated, it is the function of the trial court and not of the appellate court to assess the credi-

bility of witnesses. *Raheb v. Lemenski*, 115 R.I. 576, 579, 350 A.2d 397, 399 (1976). A trial justice's findings on the issue of credibility as a consequence are entitled to great deference on appeal. The trial justice's findings on credibility are therefore conclusive unless an examination of the record discloses that the "decision was clearly wrong or unless the trial justice, in reviewing the evidence, overlooked or misconceived relevant and material evidence." *Banach*, 648 A.2d at 1368 (quoting *Fontaine v. State*, 602 A.2d 521, 525 (R.I.1992)). *See also Rodriques v. Santos*, 466 A.2d 306, 312 (R.I.1983).

■ Here, after a careful consideration of the record, we cannot assert that the trial justice's findings on credibility were clearly wrong. Although plaintiffs claimed that they were still owed money, defendants argued that plaintiffs were fully compensated. In returning a verdict for defendants, the jury believed defendants and concluded that plaintiffs did not prove by a preponderance of the evidence that defendants owed them money. The trial justice, upon ruling on plaintiffs' motion for a new trial, found that sufficient evidence existed to support the jury's verdict. Clearly the trial justice had the opportunity to assess the credibility of the witnesses, to observe the witnesses as they testified, and to determine the weight to be given to their testimony. Therefore, we should not disturb the trial justice's determination that there was sufficient evidence to support the jury's verdict.

■ The plaintiffs next argue that the trial justice erred by refusing to include a claim based on the theory of unjust enrichment in her jury instructions. We have stated that "[c]hallenged instructions must be evaluated as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them." *Hueston v. Narragansett Tennis Club, Inc.*,

502 A.2d 827, 829 (R.I.1986). "An erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Brodeur*, 505 A.2d at 422 (quoting *Anter v. Ambeault*, 104 R.I. 496, 501, 245 A.2d 137, 139 (1968)). Here, upon review of the record before us, we cannot say that the jury instructions were erroneous or that the jury instructions prejudiced plaintiffs. It should be noted that the jury returned a verdict in favor of defendants and believed that plaintiffs failed to prove that defendants owed them money. Clearly, the jury would have found in favor of defendants even if the jury instructions had included a claim based on the theory of unjust enrichment. Therefore, plaintiffs' challenge to the trial justice's instructions must fail.

■ Finally, the plaintiffs argue that the trial justice's definition of a contract in her jury instructions confused the jury. It is clear from the record, however, that the plaintiffs did not make a written or an oral request with regard to the definition of a contract, nor did they object to that portion of the jury charge. Since the plaintiffs failed to sufficiently raise any specific objections to the trial justice's instructions there is nothing for this court to review. *Johnson v. Palange*, 122 R.I. 361, 373, 406 A.2d 360, 366 (1979).

It is the conclusion of this court that the plaintiffs' appeal be denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.