**Finis A. BASSHAM, Plaintiff,**

v.

**OWENS–CORNING FIBER GLASS COR-
PORATION et al., Defendants.**

Civ. No. 8431.

United States District Court,
D. New Mexico.

June 4, 1971.

Jack Love, Phillip D. Baiamonte, Albuquerque, N. M., for plaintiff.

Toulouse, Moore & Walters, P.A., Steven M. Mayer, Irving E. Moore, Albuquerque, N. M., for Owens-Corning Fiber Glass Corp.

Rodey, Dickason, Sloan, Akin & Robb, Peter A. Prina, Charles Larrabee, Albuquerque, N. M., for Eagle-Picher Industries, Inc., Philip Carey Corp., Johns-Manville Products Corp. and for Ryder Industries, Inc., for purpose of Motion for Extension of Time to Answer.

Shaffer, Butt & Bass, Albuquerque, N. M., for Philip Carey Corp.

## MEMORANDUM OPINION AND ORDER

PAYNE, Chief Judge.

█ It is the opinion of the Court that the motions for summary judgment should be granted and that this cause and action should be dismissed.

In the complaint, the plaintiff states that his exposure to various products manufactured and sold by the defendants has "caused the plaintiff to suffer from the disease asbestosis".

In an affidavit filed by the plaintiff on May 26, 1971, he indicates that he worked for 20 years as an insulation worker. The sum and substance of his affidavit is that it was his exposure to these products which caused his illness. He filed an affidavit by E. M. Mostyn, M. D., on the same date in which the doctor states with a reasonable degree of medical certainty that the condition of the plaintiff is due to "exposure to asbestos particles contained in asbestos dust to which he was exposed in the course of his employment over a period of approximately 20 years". From the foregoing, it is apparent to the Court that the plaintiff's condition is really a disease which was contracted over a long period of time.

█ It is my understanding that in order to invoke the doctrine of strict liability, it must be shown that the article was in an unreasonably dangerous condi-

tion. A discussion of this doctrine is found in the American Law Institute, Restatement of the Law, Torts, Second, Section 402A, pages 352–353. The comment reads as follows:

> "Unreasonably dangerous. The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from overconsumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by 'unreasonably dangerous' in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous."

There is nothing about the products which makes them imminently or inherently dangerous to human safety. There was nothing sudden or rapid that happened and, in fact, it would be impossible to determine when the plaintiff contracted the disease. In New Mexico, under state law, we have the Occupational Disease Disablement Law, N.M.Stat. Ann. § 59–11–1 (Repl.1960). This ac-

tion is not such an action but is evidently one brought for strict liability.

▋ It may be that the question of the statute of limitations is not ripe for decision at this time. The plaintiff alleges that his exposure was during the years 1948 to 1969. The question might be ripe for those companies involved where plaintiff's exposure was more than three years before the filing of the suit, which was March 16, 1970. Since I have granted summary judgment to the defendants on the grounds that the doctrine of strict liability is not applicable, the statute of limitations question is not here decided.

One of the recent cases which would be controlling on the statute of limitations question, however is Roybal v. White, 72 N.M. 285, 383 P.2d 250 (1963).

In that case Mrs. Roybal had been operated on in 1952. It was alleged that she was again operated on in 1961 at which time it was discovered that Dr. White had left a sponge in her during the first operation. In the suit against Dr. White our Supreme Court held that the cause of action accrued at the time of the wrongdoing and not at the time of the discovery. They held that a claim such as this was one for tort for injuries to a person and was controlled by Section 23–1–8 of the New Mexico Statutes Annotated, 1953 Compilation, which is a three-year statute.

Our Supreme Court cited, but did not follow, cases from California, Oregon and Arkansas which evidently held that the statute did not start to run until later. The California court took the position that the presence of the foreign body was continuing negligence and the other cases were decided on the theory that where the doctor continues to treat the patient, it is a continuing tort.

An action in strict liability is a tort action and, in the opinion of the Court, a suit for personal injuries, would be governed by Roybal v. White, supra. That case specifically held that it was controlled by Section 23–1–8 of the Statutes of New Mexico, 1953 Compilation, which is a three-year statute.

Accordingly, any exposure which occurred more than three years before the filing of the action, would be barred by the statute of limitations. The complaint and other documents do not single out when the plaintiff contracted the disease but places the exposure over a twenty-year period.

 As heretofore mentioned, the complaint alleges that the plaintiff contracted a disease, namely asbestosis. Section 402A of the Restatement of Torts, Second, mentioned above, talks about "physical harm" rather than a personal injury. The Court is loath to believe that the language really means an occupational disease rather than some kind of injury to the person. Although it is not squarely in point, the Supreme Court of New Mexico, in Aranbula v. Banner Mining Company, 49 N.M. 253, 161 P.2d 867 (1945) said:

> "We believe that the great weight of authority favors the view that silicosis acquired over a period of years and without the element of excessive exposure and sudden and unexpected occurrence of injury or illness is an occupational disease and not an injury by accident.

The Court held that silicosis was an occupational disease and that it was not included under our Workmen's Compensation Act. Asbestosis is comparable to silicosis. Silicosis is due to a long exposure to silica dust. The Court held that it was something which was gradually contracted in the ordinary course of employment. The Court further held that it was not a physical injury sustained as a result of an accident but that it was a progressive thing. Everything which the Court said about silicosis could be applied to asbestosis.

As I said, the case of Aranbula v. Banner Mining Company, supra, is not squarely in point but is cited as being persuasive by analogy.

The plaintiff cites Section 388 of the Restatement of Torts, Second. The Court recognizes the effect of that Section but, in this case, plaintiff is claiming that he suffered an occupational disease. The Court finds that the "physical harm" mentioned in this Section does not include the disease mentioned in the plaintiff's complaint.

For the foregoing reasons, it is the opinion of the Court that this action should be, and it is hereby, dismissed.