314 A.2d 1.

BALLET FABRICS, INC. *vs.* FOUR DEE REALTY CO., INC.

JANUARY 17, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This civil action for negligence was tried to a Superior Court justice and a jury which returned a verdict for the plaintiff. The case is before us on the defendant's claim of appeal from the judgment entered in accordance with the verdict.

In August, 1966, defendant was the owner of a large industrial complex, located in the city of Pawtucket. The plaintiff, Ballet Fabrics, Inc., which was substituted as plaintiff during trial, is the successor to Durabond Cor-

---

[1]Durabond Corporation merged with Ballet Fabrics, Inc., the surviving corporation, in 1970. See plaintiff's Exhibit No. 2.

poration.[1] Both are wholly owned subsidiaries of International Stretch Products, Inc., the original plaintiff.

In 1966, plaintiff occupied the first floor of defendant's premises under an oral lease. Blezard Yarn Co. occupied the second floor and Miles Fabrics, and others, occupied the third floor. In August, 1966, defendant employed a maintenance supervisor and maintenance crew of five or six men to service the tenants of the complex.

On August 6, 1966, toilets on the third floor of defendant's building in which plaintiff was a tenant overflowed and water flowed through the second and first floor ceilings causing damage to fabric stored on the first floor and owned by plaintiff. The plaintiff notified defendant that it had sustained water damage, which damage is not the subject matter of any claim or suit against defendant.

A few days later, J. Dwight Douglas, an official of defendant corporation, was notified that the toilets were still overflowing. After investigation, Douglas determined there was a blockage in the drain pipe and engaged Henry DeSousa, d/b/a AAA Electric Master Rooter Co., to remove the blockage.

Henry DeSousa testified that on August 12, 1966, the day following his engagement by Douglas, he and two of his employees arrived at the premises of defendant. They went to the office of defendant where DeSousa gave an estimate to some person whom he was unable to identify. He stated that defendant did not provide any of its maintenance crew to assist or advise him in removing the blockage. DeSousa proceeded to the second floor of defendant's premises and observed water all over the floor as a result of the overflowing of toilets on the third floor. These were the same toilets that had overflowed on August 6. DeSousa testified that he observed crudely drawn "out of order" signs on the men's and ladies' toilet facilities on the third floor. He further testified that after viewing

the problem on the second and third floors, he and his men removed the clean-out plug from the pipe located on the ceiling of the second floor and by use of his rooting equipment began to remove the blockage from the drain. DeSousa further testified that he used two 55-gallon drums to catch the water which flowed from the pipeline when he opened the clean-out plug. The pipeline was approximately 75 to 80 feet in length. During the course of the operation, DeSousa discovered that a calendar or grinding machine situated on the third floor and owned and operated by Miles Fabrics was emptying water into the pipeline. DeSousa requested that Miles turn off the machine, which request was refused. DeSousa testified that he and his men nevertheless completed the work and removed the blockage. He further stated that during the entire operation no water overflowed onto the floor from the two 55-gallon drums.

Nicholas Corrente, plaintiff's superintendent, testified that he was called to the building on August 12, 1966. He found water flowing through the second floor ceiling onto plaintiff's fabric. He ordered the fabric covered in order to protect it from the water, and immediately proceeded to the second floor to investigate. He observed a man, whose identity was unknown to him, dressed in work clothes, talking to the owner of Blezard Yarn, the second floor tenant. He testified that the floor area was saturated with water, that he observed a steady stream of water flowing from the drain near the ceiling into one of the 55-gallon drums, both of which were filled, and that the water was overflowing onto the floor and through the ceiling onto plaintiff's fabric on the first floor.

Larry Alkins, general manager of plaintiff at the time of the incident, testified and generally corroborated the testimony of Mr. Corrente. In addition, he testified as to the

ownership of the damaged fabric and the amount of damages sustained by plaintiff.

J. Dwight Douglas, secretary of defendant corporation, testified that on August 6, 1966 he investigated the toilets overflowing on the third floor and had chemicals placed in the toilets. A few days later, he was notified that the toilets were still causing problems, and, after an investigation, it was determined there was a blockage in the drain line. As a result, he called Mr. DeSousa to arrange removal of the blockage, and ordered one of his employees to put up "out of order" signs on the toilets. He further testified that he was not at the plant the day that DeSousa and his men worked on the pipeline.

After both parties had rested, defendant moved for a directed verdict on the ground that there was no evidence to indicate negligence on the part of defendant, and further that if any negligence existed it was that of the independent contractor for which defendant was not liable. After the jury had returned its verdict in favor of plaintiff, the trial justice denied defendant's motion for a directed verdict. Thereafter, defendant's motion for a new trial was denied by the trial justice.

We now consider the assignment of errors raised by defendant's appeal. These are that the trial justice erred in denying defendant's motion for a directed verdict, erred in denying its motion for a new trial, and also erred in giving instructions to the jury.

## I

### Denial of Motion for a Directed Verdict

The defendant contends that by placing chemicals in the overflowing toilets, placing "out of order" signs on the toilets, and finally engaging DeSousa to remove the blockage from the drain line, defendant had exercised reasonable care for the protection of its tenants, and was there-

fore not negligent. The defendant directs our attention to the general rule that one who engages an independent contractor to perform work is not liable for the negligent acts of the contractor or his employees in performing the work contracted for. 26 A.L.R.2d 1052, §8 (1952). The plaintiff concedes that DeSousa is an independent contractor, but asserts that the case falls squarely within the exceptions set forth in 2 Restatement (Second) *Torts* §416 at 395 and §427 at 415 (1965), which establish conditions under which negligence is attributed to an employer of independent contractors.[2]

---

[2] 2 Restatement (Second) *Torts* §416 reads as follows:

"*Work Dangerous in Absence of Special Precautions.* One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Comment *a* of §416 states:

"There is a close relation between the rule stated in this Section, and that stated in §427, as to dangers inherent in or normal to the work. The two rules represent different forms of statement of the same general rule, that the employer remains liable for injuries resulting from dangers which he should contemplate at the time that he enters into the contract, and cannot shift to the contractor the responsibility for such dangers, or for taking precautions against them. The rules stated in the two Sections have been applied more or less interchangeably in the same type of cases, and frequently have been stated in the same opinion as the same rule, or as different phases of the same rule."

Section 427 reads as follows:

"*Negligence as to Danger Inherent in the Work.* One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

618

It is well settled that in passing on a motion for a directed verdict, the trial justice must view all the evidence in the light most favorable to the adverse party, draw all reasonable inferences from the evidence favorable to that party, and refrain from weighing the evidence and passing upon the credibility of the witnesses. If, after taking such a view, the trial justice concludes that there exist issues upon which reasonable men might draw conflicting conclusions, the motion for the directed verdict should be denied and the case submitted to the jury for its determination. *D'Andrea* v. *Sears, Roebuck & Co.,* 109 R. I. 479, 287 A.2d 629 (1972); *Maggi* v. *DeFusco,* 107 R. I. 278, 267 A.2d 424 (1970); *Dawson* v. *Rhode Island Auditorium, Inc.,* 104 R. I. 116, 242 A.2d 407 (1968).

It is apparent that the trial justice concluded that on the evidence there were several controvertible factual issues presented which required submission to the jury for determination.

These issues were:
1. Whether defendant exercised proper care and precaution in assigning work to be done by the independent contractor.
2. Whether defendant should have foreseen unusual risks involved in the work to be performed after having been informed of the previous overflowing and damage.
3. Whether defendant knew or should have known of the existence and use of the calendar or grinding machine by one of its tenants and failed to so advise the independent contractor.
4. Whether water overflowed from the 55-gallon drums during the unblocking operation.

Our reading of the record persuades us that the trial justice correctly applied the rule, and, having found con-

trovertible facts, properly denied defendant's motion for a directed verdict and submitted the case to the jury.

## II

### Denial of Defendant's Motion for New Trial

The defendant next contends that the verdict was against the law, against the evidence, against the law and evidence and the weight thereof, and that consequently the trial justice erred in denying its motion for a new trial. We have examined the decision of the trial justice on said motion and concluded that he performed the duties required of him as dictated in *Barbato* v. *Epstein*, 97 R. I. 191, 196 A.2d 836 (1964).

When the trial justice follows the rule set forth in *Barbato*, the appellant on appeal must persuade this court that the trial justice was clearly wrong or overlooked or misconceived material evidence on a controlling issue of the case or was otherwise clearly wrong. *Blume* v. *Shepard Company*, 108 R. I. 683, 278 A.2d 848 (1971). This the defendant has failed to do. We consequently find no error by the trial justice and affirm his denial of defendant's motion for a new trial.

## III

### Denial of Requested Instructions to the Jury

We move now to defendant's contention that the trial justice failed to properly instruct the jury on defendant's liability for the acts of an independent contractor in performing work allegedly causing plaintiff's damages. The defendant requested that the trial justice instruct the jury as follows:

> "You are instructed that the defendant, Four Dee Realty, is not liable for the negligent acts of Mr. DeSousa, d/b/a AAA Electric Master Rooter Co., and/or his employees in the manner and method of performing his work."

This instruction was properly disallowed since its allowance in effect was a motion for a directed verdict which already had been properly denied by the trial justice. A giving of such an instruction would only mislead or confuse the jury and was therefore properly disallowed.

The defendant further requested that in the event the trial justice failed to give the above instruction, he instruct the jury that it is the general rule that an employer is not liable for the negligent acts of an independent contractor, and further instruct the jury as to the definition of an independent contractor. The trial justice did not instruct as requested by defendant. He instead instructed the jury as follows:

> "Now, on independent contractor, it is the general rule that one who hires an independent contractor is not responsible for the negligent acts of that contractor or that contractor's employees in the manner and method of performing the work for which the independent contractor was hired. Independent contractor is one who is engaged to perform services for another according to his own skill and judgment as to the manner or method of performance, free from the control and direction of the person for whom the services are being performed, in all matters connected with the manner or method of performance, except as to when and where, in general, it should be done and the results or product of the work.

> This general rule of non-liability for an employer of an independent contractor who negligently causes injury in the performance of his work is not without exception. The employer of an independent contractor cannot escape liability for injuries caused by the failure of an independent contractor to exercise due care in the performance of work which is inherently or intrinsically dangerous. Also, the employer of an independent contractor cannot escape liability for injuries caused to the third party person by the negligence of the independent contractor where the work to be performed by the independent contractor is of

such a nature that it would reasonably be expected to cause injury to such third persons unless the employer of the independent contractor takes special precautions to see that no such injury results."

It is well settled that a trial justice is required to instruct the jury as to the law applicable to the facts as the jury may be warranted in finding them, and his failure to do so, if objection be timely made, constitutes grounds for a new trial. He will not be faulted if the instruction as given states the correct rule of law and substantially conforms to instructions requested. *Goldis* v. *Fairchild*, 103 R. I. 746, 241 A.2d 298 (1968).

There can be no doubt that, on the record before us, DeSousa was an independent contractor. The plaintiff concedes that it can recover only if the emptying of the drain falls within one of the exclusions referred to by the trial justice in his charge. The defendant now claims that the charge, as it related to the exclusions, was confusing. However, the transcript shows that at the conclusion of the charge, defendant's sole complaint was its belief that there was nothing "inherently dangerous" about the "cleaning out of pipes or the fixing of backed-up toilets." At no time did it ever complain, as it does now, of any ambiguity. If defendant was concerned about such an ambiguity, it should have sought further clarification. *State* v. *Amado*, 109 R. I. 53, 280 A.2d 324 (1971).

The general rule as to an employer's immunity from liability for the torts of his independent contractor has been well established. There are, however, numerous exceptions to this rule. The Restatement devotes some 20 sections to the exceptions. *See* 2 Restatement (Second) *Torts* §§410-429 (1965). This court has in the past recognized several of these exceptions. An employer has been held liable (1) on the ground of his being subject to a non-delegable duty. *Webbier* v. *Thoroughbred Racing Pro-*

*tective Bureau, Inc.,* 105 R. I. 605, 254 A.2d 285 (1969); or (2) in respect to work that by its very nature is likely to cause harm unless proper precautions are taken, *Sroka* v. *Halliday,* 39 R. I. 119, 97 A. 965 (1916); or (3) with respect to work which is unquestionably inherently dangerous, *Blount* v. *Fong,* 48 R. I. 453, 138 A. 52 (1927); or (4) where the owner of a structure without formally accepting the contractor's work assumes practical control by appropriating it to the use for which it is built, *Read* v. *East Providence Fire District,* 20 R. I. 574, 40 A. 760 (1898).

The defendant apparently looks upon the phrase "inherently or intrinisically dangerous" as being synonymous with "extra hazardous." It has been said that this phrase is not susceptible to a precise definition and that it is easier to state the principle than to apply it. *Whalen* v. *Shivek,* 326 Mass. 142, 93 N.E.2d 393 (1950). The trial justice first alluded to the "inherently dangerous" exception but then proceeded to embody in his charge the essential and pertinent portions of §§416 and 427 of the Restatement. In fact, the language he used is substantially similar to that referred to in *Sroka. Sroka* preceded the Restatement by 49 years.

In the commentary following §427, the authors[3] emphasize that to a "considerable extent" §427 is a duplicate of §416. They also stress that the work being done by the contractor need not be the type that is classified as ultra hazardous, but that the employer's immunization from liability is inoperative when the contractor's work involves

---

[3]The Restatement speaks of liability for "physical harm." *Bassham* v. *Owens-Corning Fiber Glass Corp.,* 327 F.Supp. 1007 (D. N.M. 1971). This phrase has been defined as meaning "physical injury." However, in following the spirit expressed in *Temple Sinai-Suburban Reform Temple* v. *Richmond,* 112 R. I. 234, 308 A.2d 508 (1973), we will apply §§416 and 427 whether the risk is a threat to one's life, limb or property.

a "risk" which is "recognizable in advance" or when the employer has special reason to contemplate such a risk under the particular circumstances under which the work is being done. Prosser observes that liability may attach to the employer even if the risk could not be classified as "unavoidable," provided the contractor's proposed method of doing his job is likely to lead to a "special" risk. Prosser, *Torts* §71 at 473-74 (4th ed. 1971). It is obvious, then, whether one uses the words "inherently or imminently dangerous" or a "risk" which is "recognizable in advance" or "special risk", that there is no definite fixed standard which one can apply when seeking to determine if the employer is liable for his independent contractor. The answer must be supplied on a case-by-case basis.

Here, the landlord can be charged with constructive notice of the third floor calendar machine, its attachment to the main drain, and its discharge capacity. The machine measured 8 feet in width and 30 feet in length. The plaintiff's engineer testified that the tie-in between the machine and the six-inch drain was clearly visible from the second floor. Given the ceiling-high position of the clean-out plug and the potential drainage from the third floor, there was a "recognizable in advance" or "special risk" that once De-Sousa's rooter removed the obstruction, injury would result to the first floor tenant's property unless the defendant had taken proper precautions. It is conceded that at no time prior to rotation of the rooter did any one of the defendant's staff inform DeSousa of the potential deluge that could make its way to the lower floors. Had this been done, DeSousa would have amassed enough 55-gallon drums and the overflow been avoided.

We see no error in the charge.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Higgins, Cavanagh & Cooney, John P. Cooney, Jr., John T. Walsh, Jr.,* for plaintiff.

*Hanson, Curran, Bowen & Parks, A. Lauriston Parks, Kenneth R. Neal,* for defendant.