Mary Alice DYSON

v.

CITY OF PAWTUCKET et al.

No. 93–506–Appeal.

Supreme Court of Rhode Island.

Jan. 24, 1996.

Edward J. Mulligan, Lincoln, for plaintiff.

Marc DeSisto, Kathleen Philbin DeSisto, Providence, for defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by the defendants Daun White (White) and Richard Rousseau (Rousseau) of the Pawtucket Police Department, and the defendant city of Pawtucket (city), from entry of judgment in favor of the plaintiff, Mary Alice Dyson (Dyson), in Superior Court based on her action for assault and battery, false arrest, and violation of her constitutional rights under 42 U.S.C. § 1983.[1] At the conclusion of the plaintiff's

---

**1.** 42 U.S.C. § 1983 provides a cause of action "in favor of persons who are deprived of 'rights,

case, White moved for a directed verdict on the assault-and-battery allegations against him. The city moved for a directed verdict on the 42 U.S.C. § 1983 claims. Rousseau and White also moved for a directed verdict on Dyson's false-arrest claim. Rousseau and White claimed that Dyson was precluded from bringing a false-arrest claim because she was found guilty in the District Court of disorderly conduct. The trial justice granted the motion in regard to White on the assault-and-battery claim and denied the motion in regard to the city. The trial justice denied the motion in respect to the charge of false arrest against Rousseau and White. At the close of all the evidence defendants renewed the remaining motions. The trial justice again denied the motion on the false-arrest claim but reserved decision on the 42 U.S.C. § 1983 claim against the city. The trial justice denied the directed verdict in respect to the city after the jury verdict was rendered.

The jury returned a verdict for Dyson and awarded her $101,505 in damages. In March 1993, White, Rousseau, and the city filed a motion for a new trial. The motion was denied. However, the trial justice reduced the punitive award against Rousseau on the civil rights excessive-force claims. The trial justice also reduced the punitive-damage award against Rousseau and White for false arrest. We affirm the original judgments in part and reverse in part. The facts of the case as are pertinent to defendants' appeal are as follows.

On January 30, 1986, Dyson initiated the present action for false-arrest, assault-and battery, and civil rights violations. At trial she testified that she and her sister were passengers in a car that was stopped by Pawtucket Police Officer Douglas Clary (Clary) on January 28, 1986. Clary requested the driver's license and registration. On being informed that the driver did not have

his license or registration, Clary then requested identification from the three passengers. Dyson gave the officer her license and identification. Rousseau and White arrived at the scene shortly thereafter to provide backup. Dyson testified that Rousseau swore at her and ordered her out of the car. She got out of the car, walked a short distance from the car, and sat down on the front steps of a house. She said that she was not told that she was under arrest. She and her sister then went to a nearby phone booth to report Rousseau to his superiors for his improper conduct. Dyson said that she did not flee or run to the phone booth. She did not hear anyone telling her not to leave the area or warning her to stop. While she was at the phone booth, Rousseau arrived and asked her what she was doing. She told Rousseau that she was calling the police. According to plaintiff, Rousseau grabbed her, placed her hands behind her back, and took her to the police car, where he "smashed" her head against the trunk approximately five times. Dyson was then put into the police car and taken to the police station. While at the station, she complained that her head and her hands were hurt. However, she was not offered any medical attention, and when she asked for something to wipe her mouth, which was bleeding, she was refused.

White testified that he and Rousseau responded to the scene as a backup unit. White observed Rousseau search the vehicle. He also saw Dyson and her sister exit the vehicle. He next heard Clary shout to Dyson and her sister, "Where are you going?" White then saw two females running down the street. Clary told the women to come back, but his police report did not reflect this fact. The defendants White and Rousseau then pursued Dyson and her sister in their vehicle. They found both women at a nearby phone booth. White did not see anything

---

privileges, or immunities secured' to them by the Constitution." *Memphis Community School District v. Stachura*, 477 U.S. 299, 305–06, 106 S.Ct. 2537, 2542, 91 L.Ed.2d 249, 258 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252, 258 (1978)). Section 1983 of 42 U.S.C. provides, in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

that happened between Rousseau and Dyson. He observed Dyson in handcuffs being placed into the police cruiser. White then handcuffed Dyson's sister. He said that after the women were taken to the station and placed in a cell, he noticed a redness on Dyson's forehead and possibly a bump. However, he said that he did not ask Dyson about her injuries, nor did he tell anyone else. He stated that it was department policy that the sergeant—not a patrol officer—determines if a prisoner is in need of medical attention.

Rousseau testified that he accompanied White in the backup unit. He said that he approached the vehicle and told the driver to get out of the car. The other male passenger also got out of the car. After conducting a pat-down search of the driver and the other male passenger, Rousseau instructed them to stay by the car. He then told Dyson and her sister to get out of the car but acknowledged that neither had done anything wrong. He said that he "probably" had used vulgar language. He told the women to sit down near a wall, even though he had no reason to place them under arrest at the time. He next heard someone yelling, "Where are you going?" and noticed Dyson and her sister leaving the area. Both White and Rousseau pursued both women to a nearby phone booth. After pulling up to the phone booth, Rousseau ordered Dyson to put the phone down. He said he thought Dyson was calling either her father or the police department. He said that he grabbed Dyson by the shoulders to prevent her from moving and assisted her with putting the phone down. According to Rousseau, Dyson resisted putting the phone down and attempted to strike him. He claimed that when he tried to put her into the patrol car, the momentum generated by her attempt to hit him sent her toward the car and caused her to smash her face on the car. After the plaintiff hit the car, Rousseau arrested her for disorderly conduct and handcuffed her. Rousseau said that he did not determine that Dyson was in need of medical treatment, although he did observe that she had a cut lip and redness on her forehead. Rousseau observed that while Dyson was in her cell, two superior officers casually examined her for injuries. He testi-fied that Dyson did not ask for medical attention, nor did she complain that he had abused her.

In support of their appeal defendants raise three issues. These issues will be dealt with in the order in which they were raised. Further facts will be supplied as necessary to discuss the issues.

I

## Whether The Trial Justice Erred In Allowing The Jury To Render Separate Damage Awards For The Same Conduct

At the close of the case the jury found for Dyson and awarded the following damages against Rousseau: (1) compensatory damages of $500 and punitive damages of $10,000 for assault and battery and compensatory damages of $1 and punitive damages of $20,000 for constitutional violations associated with the assault-and-battery claim; and (2) compensatory damages of $1 and punitive damages of $10,000 for false arrest and compensatory damages of $1 and punitive damages of $25,000 for constitutional violations associated with the false-arrest claim. The jury awarded the following against White: (1) compensatory damages of $1 and punitive damages of $1,000 for false arrest and (2) compensatory damages of $1 and punitive damages of $5,000 for constitutional violations associated with the false-arrest claim. The jury awarded plaintiff compensatory damages of $30,000 against the city for violations of plaintiff's civil rights under 42 U.S.C. § 1983.

The defendants argue that the verdict-interrogatory form given to the jury allowed it to award separate damages for the state-law claims and for the associated constitutional violations. They contend that the jury should have been instructed to award one amount if it found either a state-law violation or a constitutional violation or both on either claim. The defendants also contend that the trial justice further erred by instructing the jury that plaintiff was entitled to separate relief for constitutional violations.

Prior to considering whether the trial justice erred in her instruction and sub-

mission of interrogatories to the jury, we must address whether defendants' claim of error has been waived. The plaintiff alleges that defendants did not object to specific interrogatories or to the instructions save for one objection to the jury verdict itself. General objections to instructions, without specific grounds, are not a sufficient basis for review by this court. *Brodeur v. Desrosiers,* 505 A.2d 418, 422 (R.I.1986). Rule 51(b) of the Superior Court Rules of Civil Procedure provides that:

> "No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection."

However, this court will not interpret Rule 51(b) rigidly in order to overlook trial errors. In *Belanger v. Silva,* 120 R.I. 19, 27, 384 A.2d 605, 610 (1978), we stated that "a trial justice's refusal to charge * * * can be assigned as a ground of appeal only if a request was made to charge differently or if objection was made to the charge as given." In the instant matter defendants objected to the trial justice's refusal to instruct as they had requested in a pretrial memorandum where requested jury instructions were listed. The defendants also objected to interrogatory No. 4. Although they did not state with specificity the reasons for their objections to the jury instructions, their objection to instructions, interrogatory No. 4, and to various charges is sufficient to preserve the issue for review.

■ Compensatory damages under 42 U.S.C. § 1983 are only available to discharge actual injury. *Memphis Community School District v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249, 259 (1986). Further, damages awarded for actual harm are ordinarily assumed to deter constitutional violations. *Id.* at 309, 106 S.Ct. at 2544, 91 L.Ed.2d at 260. We are also persuaded by a recent decision of the Supreme Court of Connecticut in which a plaintiff was estopped from bringing suit under state law against police for assault and battery and negligence after he was awarded damages in a previous federal suit under 42 U.S.C. § 1983 alleging

the same claims. *Virgo v. Lyons,* 209 Conn. 497, 551 A.2d 1243 (1988). In *Virgo* the court noted that the interrelationship between § 1983 and common-law tort claims is widely recognized. 209 Conn. at 502, 551 A.2d at 1246. Moreover, § 1983 damages are ordinarily calculated following the rules applicable to common law torts. 209 Conn. at 504–05, 551 A.2d at 1247. In *Virgo,* the court commented that because 42 U.S.C. § 1983 provides damages for actual injuries, the plaintiff would not be permitted to relitigate the issue of damages under state law for the same alleged wrongs of the same defendants and involving the same injuries. *Id.* at 502, 551 A.2d at 1245.

■ We agree with defendants that the jury awards in the instant case allowed Dyson to recover damages for both the torts and the civil rights claims based upon the same facts, resulting in double recovery for the same injury. We conclude that having been awarded compensatory and punitive damages under state law, Dyson cannot be allowed to recover compensatory and punitive damages for civil rights violations arising from the same transaction. We therefore affirm the awards for compensatory damages in the amount of $500 and punitive damages in the amount of $10,000 against defendant Rousseau for assault and battery, compensatory damages in the amount of $1 and punitive damages of $10,000 against defendant Rousseau for false arrest, and compensatory damages of $1 and punitive damages of $1,000 against defendant White for false arrest. We vacate the awards to Dyson against both defendant officers on the civil rights claims as constituting double recovery for the same injury.

## II

Whether The Trial Justice Erred By Denying The City's Motion For A Directed Verdict On The Count Alleging Municipal Liability Under 42 U.S.C. § 1983

The defendant municipality contends that there was insufficient evidence to support the action against it under 42 U.S.C. § 1983 and that, therefore, the trial justice erred in not granting its motion for a directed verdict.

The defendant municipality argues that the trial justice erred in finding that the police officers were following department policies regarding detention of individuals and medical attention for prisoners. The defendant municipality also argues that the wrongful actions of an officer are insufficient to establish municipal policy. We agree with defendant's contentions but on different grounds from those advanced.

 In reviewing a motion for a directed verdict, we must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable and legitimate inferences that may properly be drawn from the evidence, without weighing the evidence or assessing the credibility of the witnesses. *Jameson v. Hawthorne*, 635 A.2d 1167, 1171 (R.I.1994). This court must decide whether the jury could find any policy attributable to the municipality that violated the plaintiff's constitutional rights. Municipal liability under 42 U.S.C. § 1983 attaches only when a deliberate choice to follow a course of action is made by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452, 465 (1986). The word "'policy' generally implies a course of action consciously chosen from among various alternatives." *Id.* at 484, 106 S.Ct. at 1300, 89 L.Ed.2d at 465. In determining municipal liability, a trial justice must first "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School District*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598, 628 (1989). "Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue, by policies which affirmatively command that it occur * * * or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Id.*

 In the instant case, defendant officers testified at length regarding their understanding of the policies of the police department in regard to arrest, detention, and medical attention for prisoners. However, no evidence submitted to the trial justice identified the city official who had the power to make final municipal policy with respect to detention of suspects by police officers, nor was there evidence on the record from which the identity of the policy-making officials could be inferred. From the evidence provided, the trial justice also could not identify the policy makers for the police department with respect to medical care for prisoners. Without these determinations, the question of whether defendant officers' conduct respecting the detention of Dyson and her request for medical care was the result of conscious decisions that reflected final municipal policy under 42 U.S.C. § 1983 was not properly before the jury. We conclude, therefore, that a directed verdict should have been granted on the question of municipal liability under 42 U.S.C. § 1983.

### III

### Whether A Guilty Finding In District Court Precluded A Subsequent Civil Action For False Arrest

The defendant officers contend that the trial justice erred in not granting a directed verdict when Dyson was found guilty in the District Court on the charge of disorderly conduct. The defendants argue that the guilty finding precluded a subsequent civil action for false arrest on the same charge. The defendants analogize the rule for malicious-prosecution cases for their argument that Dyson's prior conviction for disorderly conduct established probable cause and that an action for false arrest should therefore have been precluded. We disagree with these contentions.

 Damages for false arrest or false imprisonment in Rhode Island are available only when the imprisonment is improper or unjustified. *Moody v. McElroy*, 513 A.2d 5, 7 (R.I.1986). "The action for false imprisonment is derived from the ancient common-

law action of trespass and protects the personal interest of freedom from restraint of movement." *Id.* "Whenever a person unlawfully obstructs or deprives another of his freedom to choose his location, for however brief a period, that person will be liable for that interference." *Id.* "To establish this cause of action, a plaintiff must show more than that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* The plaintiff must also show that he or she was detained without legal justification. *Johnson v. Palange,* 122 R.I. at 361, 364, 406 A.2d 360, 362 (1979).

■■■■ The common-law tort of malicious prosecution, unlike false arrest or false imprisonment, requires evidence of malice. *Moody,* 513 A.2d at 8. Malicious prosecution "is the institution of legal proceedings whereby an arrest is made under a lawful process and the essential elements of such an action are proof that the party instituting the proceedings which resulted in the arrest had acted with *'malice and want of probable cause.'* " *Id.* (quoting *Powers v. Carvalho,* 117 R.I. 519, 526, 368 A.2d 1242, 1246 (1977)). Proof of a conviction resulting from an arrest is conclusive evidence of probable cause in malicious-prosecution cases. *Hull v. Sprague,* 23 R.I. 188, 189, 49 A. 697, 697 (1901); *Welch v. Boston & Providence Railroad Corp.,* 14 R.I. 609, 609–10 (1884); *King v. Colvin,* 11 R.I. 582, 583 (1877).

■■■■ An officer is free from liability for making a warrantless arrest if probable cause to arrest exists at the time an arrest is made. *Moody,* 513 A.2d at 9. Probable cause exists when the facts and the circumstances within the officer's knowledge at the time of arrest, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person's belief that a crime has been committed and the suspect committed the crime. *State v. Aponte,* 649 A.2d 219, 222 (R.I.1994). The issue of probable cause is ordinarily one for jury resolution. *Johnson,* 122 R.I. at 371, 406 A.2d at 365. The defendant officers argue that plaintiff's conviction of disorderly conduct establishes the existence of probable cause and urge that the "conclusiveness doctrine" in malicious-prosecution cases be extended to this case such that plaintiff's conviction for disorderly conduct would bar her claim for false arrest.

■■■■ We disagree with the defendant officers' contentions and decline to extend the rule for malicious prosecution to bar Dyson's claim of false arrest. "Guilt or innocence of the underlying charge * * * is not relevant to the determination of whether the arresting officer committed a false imprisonment." *Moody,* 513 A.2d at 10. In the instant case Rousseau provoked Dyson's disorderly behavior when he arrested her without probable cause as she was attempting to make a phone call. He cannot now be allowed to use her subsequent conviction on the charge of disorderly conduct to avoid liability for false arrest.

For the reasons stated, we sustain the defendants' appeal in respect to the plaintiff's award for the constitutional violations arising from the facts of her state-tort claims. We sustain the city's appeal from the trial justice's refusal to grant a directed verdict in favor of the city on the plaintiff's claim of municipal liability. We affirm the trial court's denial of a directed verdict against the plaintiff on her claim for false arrest. The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.