EAST COAST COLLISION &
RESTORATION, INC.

v.

Robert ALLYN et al.

No. 98–404–Appeal.

Supreme Court of Rhode Island.

Dec. 15, 1999.

**274**

Michael Kiselica, Warwick, for Plaintiff.

Raymond A. Lafazia, Providence, for Defendants.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

**PER CURIAM.**

This case came before the Supreme Court for oral argument on November 3, 1999, pursuant to an order directing the parties to appear in order to show cause why the issues raised on appeal should not be summarily decided. Robert Allyn (Allyn) and Chester Vanderpyl, III (Vanderpyl) (collectively, owners), have appealed the trial justice's denial of their motions for judgment as a matter of law and for a new trial. After hearing the arguments of counsel for the parties and after examining the memoranda submitted, we are of the opinion that cause has not been shown. Therefore the issues raised by this appeal will be summarily decided.

In 1987, East Coast Collision and Restoration, Inc. (tenant) leased a building in Exeter, Rhode Island, from the owners, who had constructed the building to the tenant's specifications, to use as the site of the tenant's auto body repair business. Rather than hiring a general contractor to oversee construction of the building, the owners hired the necessary contractors for each phase of the construction. About eighteen months after the tenant occupied the building, the owners constructed an addition to the building, which the tenant occupied for the same purposes.

Electrical problems began after the tenant moved into the original building, including dimmed and flickering lights, tripped circuit breakers, and electrical shocks received from touching the steel railing of a garage door. There was also a fire in the main fuse panel. The tenant told Vanderpyl of the problems, and the fuse panel was repaired, but the other problems continued. The tenant was unaware of any actions that were taken to correct them. On February 11, 1990, a fire broke out, completely destroying the premises, including vehicles and equipment owned by the tenant.

On June 27, 1991, the tenant filed a complaint in Superior Court, alleging that

the owners negligently maintained, repaired, and operated the premises and that this negligence resulted in the fire that caused damages to the tenant. At a jury trial held in January 1998, a number of experts testified about the cause of the fire. Deputy State Fire Marshal Gerald Leddy testified that a malfunction in the wiring most probably caused the short circuit that started the fire, although he was unable to identify what caused the malfunction. Another expert testifying on behalf of the tenant stated that he believed damaged insulation on a wire caused the fire and that the insulation was most likely damaged at the time of installation by either an electrician or a carpenter. The owners presented two witnesses who were unable to identify the cause of the fire.

At the close of evidence, the trial justice instructed the jury on several issues that are in dispute in this appeal. The jury was instructed that it should determine whether the owners were general contractors, and if they were, whether they constructed the building in a non-negligent fashion by requiring work to be done safely. The trial justice also instructed the jury on causation and additionally instructed that the lease could provide evidence that the owners had the duty to maintain the electrical system. The jury returned a verdict for the tenant, and judgment was entered on January 20, 1998. Pursuant to Rules 50(b) and 59 of the Superior Court Rules of Civil Procedure, the owners filed a motion for judgment as a matter of law and a motion for a new trial. The trial justice denied both motions, and the owners have appealed.

In support of their motion for judgment as a matter of law, the owners asserted that as landlords they could not be held liable for a failure to repair or maintain the premises because the law does not impose such a duty on lessors of nonresidential property absent a covenant to the contrary. They further argued that as landlords they were not liable for damages resulting from a hidden defect. We agree with both arguments. On appeal, the owners also argued that there was no legal basis under which they could be held liable as general contractors.

■ Before we review the substance of the owners' arguments, we must deal with the tenant's claim that the issue of general contractor liability is not properly before us because the owners did not preserve their objection at trial. It is true that this Court has stated that "[g]eneral objections to instructions, without specific grounds, are not a sufficient basis for review by this court." *Dyson v. City of Pawtucket,* 670 A.2d 233, 237 (R.I.1996). However, we have also held that this rule will not be interpreted rigidly in order to overlook trial errors. *Id.* In *Dyson,* we determined that if a request was made to charge differently, and objection was made to the failure to charge in accord with the request, that would be sufficient to preserve the issue for appeal. *Id.* In the case at bar, the owners did request alternative instructions on the issues of general contractor and landlord liability. Thus, the issue is properly before us.

■ When deciding a motion for judgment as a matter of law, the trial court views the evidence in the light most favorable to the nonmoving party and gives to that party the benefit of all reasonable inferences that properly may be drawn from the evidence, without weighing the evidence or assessing the credibility of the trial witnesses. *Morrocco v. Piccardi,* 674 A.2d 380, 382 (R.I.1996). When the Supreme Court reviews the trial justice's decision on the motion, it is bound by the same rules and applies the same analysis as does the trial justice. *Id.*

■ We must first consider whether the owners could be held liable as general contractors. The general rule is that one who employs an independent contractor is not liable for the negligent acts of that contractor. *Focus Investment Associates, Inc. v. American Title Insurance Co.,* 797 F.Supp. 109, 112 (D.R.I.1992), *aff'd. in*

*part, vacated in part,* 992 F.2d 1231 (1st Cir.1993); *Ballet Fabrics, Inc. v. Four Dee Realty Co.,* 112 R.I. 612, 621, 314 A.2d 1, 6 (1974). In the present case, it is undisputed that the workers who constructed the building were independent contractors. Thus, under the general rule the owners are not liable for any negligent acts of an electrician or carpenter that caused the defect that started the fire.

The rule concerning liability for the negligence of independent contractors is not without exceptions. In particular, it has been held that a general contractor may be held liable for the negligence of his or her subcontractors. *Pastorelli v. Associated Engineers, Inc.,* 176 F.Supp. 159, 165–66 (D.R.I.1959), *cited with approval in Maggi v. De Fusco,* 107 R.I. 278, 283, 267 A.2d 424, 427 (1970). In that case, however, there was evidence that the general contractor had explicitly assumed the duty to supervise the work of the subcontractors. *Pastorelli,* 176 F.Supp. at 162. In the case at bar, there is no evidence that the owners assumed such a duty. Further, they were not builders by occupation and did not regularly engage in the business of constructing buildings. These defendants, therefore, do not fit within the limited exception to the general rule that the employer of an independent contractor is not liable for the contractor's negligence.

The tenant went on to argue that we should apply the exception that imposes liability on the employer of an independent contractor when the work is unquestionably inherently dangerous as discussed in *Ballet Fabrics, Inc.,* 112 R.I. at 622–23, 314 A.2d at 7. That case, however, is easily distinguishable from the facts before us. It was absolutely clear that the plumbing problem in *Ballet Fabrics* was extremely likely to cause damage to a tenant if it was not properly repaired, and the independent contractor's negligent act that did cause damage was open and obvious. *Id.* at 614–15, 314 A.2d at 3. In the case at bar, the specific hidden defect was unknown to all parties until the fire occurred,

and there was no evidence presented that the owners knew or could have known of any allegedly negligent acts committed by the independent contractors who constructed the building. Moreover, we refrain from establishing a rule that every time a person hires an electrician, the work involved is "unquestionably inherently dangerous" such that the employer is held liable for the electrician's negligence.

We must also address the tenant's argument that the owners may be held liable as landlords because they had a duty to maintain the building's electrical system. The general rule in Rhode Island is that, absent an explicit covenant to the contrary, the lessor of nonresidential space has no duty to repair or maintain that portion of the premises leased to the lessee. *Walsh v. Israel Couture Post, No. 2274 V.F.W.,* 542 A.2d 1094, 1097–98 (R.I. 1988). The tenant argued that there was sufficient evidence for the jury to find that the owners had assumed a duty to repair, and it found support for this argument in two facts. First, there was a provision in the lease that provided that the owners shall be given access to the building for maintenance purposes. Second, the owners paid the electrician who repaired the main fuse panel after a small fire.

Unfortunately, neither the clause in the lease nor the isolated instance in which the owners undertook a repair, considered separately or together, is sufficient to impose on the owners a duty to repair or maintain the electrical system of the leased building. We have stated that a provision in a lease reserving to the lessor the right to enter and make repairs, standing alone, does not obligate the lessor to make repairs. *Givens v. Union Investment Corp.,* 116 R.I. 539, 544, 359 A.2d 40, 42 (1976). With respect to the tenant's argument that the owners assumed the duty to repair by paying for the repair of the fuse panel, we point out that this Court has not considered what conduct by a lessor evinces an assumption of the duty to

repair or maintain the leased premises. Although such an assumption may be possible, we do not believe that there was sufficient evidence for a jury to find such assumption here, a case involving only one instance in which the lessor made a repair. Thus, neither the lease nor the owner's efforts to repair the fuse panel have imposed a duty on the owners to repair and maintain the building in this case.

 Finally, the tenant argued that because the owners may be charged with constructive knowledge of the defect by virtue of having hired the independent contractors who allegedly caused the defect, the owners may be held liable for the damage caused by the defect. The general rule is that the lessor of real property is not liable for damages caused by hidden or latent defects in existence at the time the property was leased unless the lessor knew of the defect and the lessee did not. *Monti v. Leand,* 108 R.I. 718, 721–22, 279 A.2d 743, 745–46 (1971). Again, there may be circumstances in which the lessor's liability could be based on constructive knowledge of a hidden defect. In the case at bar, however, there was no evidence that the owners were aware or could have been aware of the allegedly negligent act that created the defect. Further, it was acknowledged at oral argument that there was no evidence in the case of any method by which the owners could have reasonably become aware of the existence of the hidden defect. The mere fact that the lessor hired the independent contractor who allegedly caused the defect, with no other evidence indicating that the lessor knew or should have known of the defect, is not sufficient to give rise to constructive knowledge that would justify imposing liability for damage caused by a hidden defect.

In conclusion, as a matter of law there was not sufficient evidence to support a finding by the jury that the owners were liable for the negligent acts of the independent contractors who constructed the building. In addition, there was insuffi-cient evidence to support a finding that the owners had assumed the duty to maintain the building's electrical system, or to support a finding that the owners had constructive knowledge of the hidden defect that caused the fire. The trial justice erred in denying the owners' motion for judgment as a matter of law. Therefore, the appeal is sustained, and the judgment of the Superior Court is reversed. The papers in the case are hereby remanded to the Superior Court, with our direction that judgment be entered for the owners.